**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LUNAI BIOWORKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTSPEED FINANCIAL SERVICES GROUP LLC, *et al*..<br><br>Defendants. | Civil Action No. 26-549-CFC |

# DEFENDANT BISOKE, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP

Kristen Healey Cramer (#4512)
Noelle B. Torrice (#5957)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Tel: (302) 442-7010
kcramer@beneschlaw.com
ntorrice@beneschlaw.com

Of Counsel:
Ashwin J. Ram (*pro hac vice* forthcoming)
BUCHALTER LLP
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Dated: September 4, 2026

*Counsel for Bisoke LLC*

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

II. SUMMARY OF ARGUMENT ........................................... 1

III. STATEMENT OF FACTS ........................................... 3

IV. ARGUMENT ........................................... 4

A. Plaintiff Pleads Away the Only Deception It Alleges Against Bisoke ........................................... 4

**1.** Plaintiff pleads neither element of the Rule it invokes. .............. 4

**2.** Plaintiff alleges no failure to deliver by Bisoke, which decides the manipulative-act element. ........................................... 5

**3.** Plaintiff has told the Court whose obligation the locate was, and it was not Bisoke's. ........................................... 6

B. Plaintiff's Scienter Allegations Describe a 40-Account Book, Not Bisoke ........................................... 8

C. Plaintiff Concedes the PSLRA Bar, Then Pleads Around It ............. 11

D. Count V Fails Whether or Not Delaware Recognizes the Claim It Pleads ........................................... 13

E. Plaintiff Calls Short Selling Manipulation Without Pleading What Makes It So ........................................... 15

F. Plaintiff Ties No Loss to Bisoke and the Loss It Pleads Is Not Its Own ........................................... 17

G. Counts IV and VII Ask This Court to Adopt a Presumption No Delaware Court Has Adopted ........................................... 18

H. Counts II and VI Rest on a Criminal Statute and an Unpleaded State of Mind ........................................... 20

V. CONCLUSION ........................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Wachovia Mortg. Corp.*,
621 F.3d 261 (3d Cir. 2010) ....................13, 14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ....................10, 15

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
189 F.3d 321 (3d Cir. 1999) ....................11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................19

*Boyle v. United States*,
556 U.S. 938 (2009)....................12

*Chaudhry v. HCL Techs. Ltd. Corp.*,
No. 24-662-GBW, 2025 WL 326782 (D. Del. Jan. 29, 2025) ....................20

*DeKalb Cnty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016) ....................20

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................17, 18

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)....................15

*Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
40 F.3d 63 (3d Cir. 1994) ....................14

*GFL Advantage Fund, Ltd. v. Colkitt*,
272 F.3d 189 (3d Cir. 2001) ....................1, 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)....................19

*Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*,
585 F. Supp. 3d 405 (S.D.N.Y. 2022) ....................6, 15

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ....................12

*Inst. Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ....................9

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................9

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
772 F.3d 158 (3d Cir. 2014), *aff'd on other grounds sub nom. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016)....................7

*Mathew v. Citigroup Glob. Mkts. Inc.*,
2024 WL 3030513 (D. Mass. June 17, 2024)....................7

*McCabe v. Ernst & Young, LLP*,
494 F.3d 418 (3d Cir. 2007) ....................17

*Menzies v. Seyfarth Shaw LLP*,
197 F. Supp. 3d 1076 (N.D. Ill. 2016), *aff'd in part, vacated in part, and remanded*, 943 F.3d 328 (7th Cir. 2019) ....................11

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)....................12

*SEC v. Mintz*,
723 F. Supp. 3d 386 (D.N.J. 2024)....................5

*Tani v. FPL/Next Era Energy*,
811 F. Supp. 2d 1004 (D. Del. 2011)....................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................11

*Traudt v. Rubenstein*,
No. 2:24-cv-782, 2025 WL 1795825 (D. Vt. June 30, 2025)....................6

**State Cases**

*Allen Family Foods, Inc. v. Capitol Carbonic Corp.*
2011 WL 1205138 (Del. Super. Ct. Mar. 31, 2011)....................14

*Gaffin v. Teledyne, Inc.*,
611 A.2d 467 (Del. 1992)....................18, 19

*Green Plains Trade Grp. LLC v. Archer Daniels Midland Co.*,
31 N.W.3d 577 (Neb. 2026)....................14

*Kaufman v. i-Stat Corp.*,
754 A.2d 1188 (N.J. 2000)....................19

*Organovo Holdings, Inc. v. Dimitrov*,
162 A.3d 102 (Del. Ch. 2017)....................15

*Stephenson v. Capano Development, Inc.*,
462 A.2d 1069 (Del. 1983)....................18

*Willcot v. SEC*,
No. MO:24-CV-00317-DC-RCG, 2025 WL 4656790, at *5 (W.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 737346 (W.D. Tex. Mar. 16, 2026), *appeal docketed*, No. 26-50286 (5th Cir. Apr. 3, 2026)....................6

**Federal Statutes**

15 U.S.C. § 78i(f)....................20

15 U.S.C. § 78u-4(b)(2)(A)....................9

18 U.S.C. § 1343....................20, 21

18 U.S.C. § 1962....................11, 12

18 U.S.C. § 1964....................11, 21

28 U.S.C. § 1367....................21

Fed. R. Civ. P. 9....................9

Fed. R. Civ. P. 10b-5....................15, 19

Fed. R. Civ. P. 10b-21 ........................................................................1, 4, 7

Fed. R. Civ. P. 12 ..................................................................................1

Fed. R. Civ. P. 15 ..............................................................................1, 21

**Regulations**

17 C.F.R. § 242.105 ..............................................................................7

17 C.F.R. § 242.203 ...........................................................................6, 7

73 Fed. Reg. 61666 ...............................................................................8

**Other Authorities**

Restatement (Second) of Torts § 766A.................................................13

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Lunai Bioworks, Inc. ("Plaintiff") filed this action on May 11, 2026 against 150 fictitious parties. Seven days later, it moved *ex parte* for expedited third-party discovery to learn whom to sue. (D.I. 7, 8.) On August 3, Plaintiff filed a First Amended Complaint naming ten defendants. (D.I. 33.) Bisoke was served on August 14. On August 26, Plaintiff filed a Second Amended Complaint ("SAC") consisting of 182 pages, seven counts and roughly 150 named defendants. (D.I. 37.)[1] Bisoke moves to dismiss under Rule 12(b)(6).

## II. SUMMARY OF ARGUMENT

1. "[S]hort selling, even in large volumes, is not in and of itself unlawful and therefore cannot be regarded as evidence of market manipulation." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 209 (3d Cir. 2001). Setting aside Plaintiff's labels, short selling is what remains against Bisoke: seven dates, seven share totals, four account numbers, and execution counts.

2. Every count requires deception. Plaintiff concedes no defendant made a representation directly to it, and substitutes one implied from the act of entering a short sale order, drawing from Rule 10b-21. (¶¶ 615, 616.) The release adopting the

---

[1] Plaintiff exhausted its amendment as of course with the First Amended Complaint. Rule 15(a)(2) required leave for the Second. The only leave sought or granted was leave to file under seal. (D.I. 38, 39.) No Rule 15 motion, stipulation, or consent appears. Bisoke does not move to strike on that ground and addresses the pleading as filed, without waiver.

rule reaches sellers who deceive their broker about a locate source and fail to deliver. Plaintiff pleaded neither against Bisoke. (¶¶ 2, 17(c).)

3. Plaintiff also conceded whose obligation the locate was: it "attaches to the broker-dealer that accepts a short sale order, not to the customer on whose behalf the order is placed." (¶ 536.) Bisoke is pleaded as a customer. (¶¶ 194, 378(c).)

4. Of Plaintiff's three indicia of customer scienter (¶ 551), it pleads the first of defendants at other firms but of no Opal account; the second only of the Opal book in the aggregate; and the third is contradicted by its concession that Bisoke traded at a single firm. (¶ 312.)

5. The SAC acknowledges the PSLRA's bar on RICO claims resting on securities fraud, then pleads wire fraud "without regard to whether the same conduct is also actionable as securities fraud." (¶ 571.) The Third Circuit forecloses this argument. Count III also fails because nothing in ¶¶ 572-575 identifies anything that Bisoke directed.

6. Count V pleads that defendants caused Lunai to fall out of compliance with its Nasdaq listing agreement. The Third Circuit has predicted Delaware courts would reject that claim, and the one decision from another Delaware court that disagreed dismissed such a claim anyway.

7. Counts I, II, IV, VI and VII fail for want of a manipulative act, a representation, reliance, and an actionable predicate.

## III. STATEMENT OF FACTS

Plaintiff alleges that defendants sold LNAI short without valid locates between November 5, 2025 and May 4, 2026. (¶¶ 5, 194.) It sues six broker-dealers, two individuals who own or control two of them, and those firms' customers. (¶ 6.)

Bisoke is only pleaded as a customer: "a U.S. Virgin Islands limited liability company engaged in investment management and development of trading systems" that "held four registered trading accounts." (¶ 194.) All four are Opal accounts. (¶ 378(c).)

As for Bisoke's own broker, Plaintiff alleges that Opal "made no request for a locate in this security at any time, from any account, and none appears anywhere in the records obtained by Lunai." (¶ 17(c); accord ¶¶ 551, 574.)

Plaintiff's allegations about Bisoke's trading involves pure arithmetic: seven dates, seven share totals, an aggregate of 1,301,690 shares across four accounts, and 4,046 executions. (¶¶ 309, 310, 378(c).) Bisoke is alleged to have opened those accounts "with the same broker-dealer, in rapid succession as each prior account approached position concentration thresholds." (¶ 312.)

The remaining allegations describe someone else's conduct. Paragraph 377 pleads that the Opal accounts it lists, including "a fourth account for Bisoke LLC," "approved by Defendant Goldberg personally, on Opal's own account-opening

forms," and that Bisoke's account ending 053 has an address line reading "ADDRESS UNKNOWN" in Opal's record.

Nowhere does the pleading allege a statement by Bisoke to anyone, a mismarked order, a failure to deliver by Bisoke, or a pre-market execution figure for Bisoke or for any other Opal account.

## IV. ARGUMENT

### A. Plaintiff Pleads Away the Only Deception It Alleges Against Bisoke

Counts I and II require a manipulative or deceptive act, Counts IV and VII a false representation, and Counts III and VI an actionable predicate. Deception is a common thread through all counts. Plaintiff's own pleading defeats them three times over.

#### 1. Plaintiff pleads neither element of the Rule it invokes.

Paragraph 615 concedes that "Plaintiff does not allege that any Defendant made a representation directly to Plaintiff." In its place Plaintiff substitutes an implied representation "each Defendant made, by the act of entering each short sale order," drawing from 17 C.F.R. § 240.10b-21 and its adopting release. (¶¶ 615, 616.)

Plaintiff quotes the release. The rule reaches persons "who deceive specified persons about their intention or ability to deliver securities in time for settlement (including persons that deceive their broker-dealer about their locate source or ownership of shares) and that fail to deliver securities by settlement date." (¶ 2

(quoting Release No. 34-58774) (emphasis added).) Plaintiff pleads neither of these two elements against Bisoke.

Based on Plaintiff's own allegations, the broker asked for nothing: Opal "made no request for a locate in this security at any time, from any account." (¶ 17(c); accord ¶¶ 551, 574.) A customer cannot misstate its locate source to a firm that never inquires.

*SEC v. Mintz*, 723 F. Supp. 3d 386 (D.N.J. 2024), shows what such a claim requires. The customer defendants there mismarked sell orders as "long" and, the SEC alleged, misled "their executing broker-dealers by falsely representing to have obtained locates . . . from their prime brokers when, in truth, they had not." *Id.* at 395. Deceiving a broker takes a statement to the broker; Plaintiffs' pleading identifies none.

**2. Plaintiff alleges no failure to deliver by Bisoke, which decides the manipulative-act element.**

The word "Bisoke" appears in eleven numbered paragraphs and in the section heading preceding ¶ 308, and not one of them alleges that Bisoke failed to deliver anything. The only delivery allegations that reach Bisoke are paragraphs 564 and 565, which generically refer to "Defendants," and paragraph 549, which names no actor at all. None identifies a date or quantity failure.

Plaintiff's one account-level fail allegation confirms the omission rather than curing it. Paragraph 376 pleads that the clearing firm's "own fail allocation file

allocates 4,640,053 shares of the March 18 failure to three Opal accounts, of which 4,299,894 shares are allocated to" one account, which ¶ 378(a) assigns to ETERNALENVY. Plaintiff never alleges that a Bisoke account is among the other two, which together carry 340,159 shares. Bisoke's pleaded March 17 volume is 820,654 shares (¶ 309(d)), far more than that residual.

That omission should decide the "fail" element. *Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405 (S.D.N.Y. 2022), sustained spoofing claims but dismissed the naked-short-selling claims on a complaint that did allege failures to deliver. Those allegations were "conclusory," made "without pointing to any specific examples." *Id.* at 422. "Without any specific factual allegation that any Defendant failed to deliver shares following a short sale, the Complaint fails to allege that abusive naked short selling took place." *Id.*; *see also Traudt v. Rubenstein*, No. 2:24-cv-782, 2025 WL 1795825, at *7-8 (D. Vt. June 30, 2025); *Willcot v. SEC*, No. MO:24-CV-00317-DC-RCG, 2025 WL 4656790, at *5 (W.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 737346 (W.D. Tex. Mar. 16, 2026). Neither has Plaintiff tied a failure to a defendant.

**3. Plaintiff has told the Court whose obligation the locate was, and it was not Bisoke's.**

Plaintiff asserts that "[t]he obligation imposed by Rule 203(b)(1) of Reg SHO attaches to the broker-dealer that accepts a short sale order, not to the customer on

whose behalf the order is placed." (¶ 536.) Correct. The rule provides that "[a] broker or dealer may not accept a short sale order in an equity security from another person" without borrowing or having reasonable grounds to believe the security can be borrowed. 17 C.F.R. § 242.203(b)(1). The customer is that other person, the object of the rule rather than its subject. None of the four exceptions in § 242.203(b)(2) reaches a customer, and the close-out obligations of § 242.203(b)(3) and § 242.204(a) fall on "a participant of a registered clearing agency," which Bisoke is not alleged to be.

The Third Circuit describes the rule the same way: "Regulation SHO imposes 'locate' and 'close out' requirements on broker-dealers." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 161 (3d Cir. 2014), *aff'd on other grounds sub nom. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016).

Plaintiff drafted two answers to this. The first is that a customer "is liable for its own short sales" and "is not relieved of that liability by the fact that a broker-dealer accepted the orders." (*Compare* ¶ 14 *with* ¶ 536.) But Regulation SHO affords no private right of action. *Mathew v. Citigroup Glob. Mkts. Inc.*, 2024 WL 3030513,

at *6 (D. Mass. June 17, 2024).[2] No count pleads one, nor could they, and that leaves fraud, which requires deception.

The second is paragraph 536's closing clause, preserving "whatever liability its customer separately bears." Separate liability requires a separate wrong, and the only conduct attributed to Bisoke is selling short on days when its broker had not obtained a locate the broker never sought. (¶ 197.) Plaintiff cannot plead that the duty was Opal's, that Opal discharged none of it, and then charge the same failure to Bisoke as fraud.

**B. Plaintiff's Scienter Allegations Describe a 40-Account Book, Not Bisoke**

Plaintiff pleads the locate omission as Opal's state of mind. Opal "requested no locate whatsoever, from any of its 41 customer accounts, at any time during the period, a complete absence of effort from which knowledge or recklessness may be inferred." (¶ 551.) The pleading says nothing about what Bisoke knew of that practice.

The same paragraph sets out three indicia of customer scienter and promises they are "the trading patterns pleaded as to each" defendant. (¶ 551.)

---

[2] Rule 10b-21 also supplies no private right of action. The reported decisions construing a rule of that number address the pre-1997 Rule, replaced in 1997 by Rule 105 of Regulation M, 17 C.F.R. § 242.105. Plaintiff invokes the 2008 antifraud rule adopted at 73 Fed. Reg. 61666, for which no decision appears to have construed or identified a private right of action.

*Pre-market concentration.* Plaintiff supplies a pre-market percentage for individual defendants at Lightspeed and Cobra. (*E.g.*, ¶¶ 65, 86, 106, 163, 164.) It supplies none for Bisoke or any other Opal account. It offers instead a single book-level figure, that "54 percent of Opal's short selling executed before the market opened," which it never allocates among the 39 accounts that make it up. (¶¶ 364, 365.) One of those accounts is 57.5 percent of the book. (¶ 377.)

*Positions closed at nil.* The indicium paragraph 551 identifies is intraday round-tripping: "positions opened and closed at exactly nil within the trading day on a recurring basis." Plaintiff pleads that of 35 unnamed accounts on 72 unidentified account-days, but never says which. (¶ 365.) The separate allegation that every Opal account closed the period at nil describes a flat book after six months, not specific trading days.

*Trading across multiple correspondents.* Here Plaintiff contradicts itself. Bisoke "opened four separate accounts with the same broker-dealer." (¶ 312 (emphasis added).) Paragraph 38 identifies the customers who traded through more than one firm; Bisoke is not among them. Paragraph 6 likewise omits the "across two correspondents" notation it attaches to Grothe and Wasserman.

A characteristic of a 40-account book is not an allegation about an account. The PSLRA demands particularity "with respect to each act or omission alleged." 15 U.S.C. § 78u-4(b)(2)(A); *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d

Cir. 2009). Rule 9(b) demands that a plaintiff "allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Paragraphs 549, 550 and 564 attribute sham resets, wash trades, spoofing and layering to "Defendants" across roughly 150 parties, without saying who did which act, when, or with whom.

Plaintiff's general scienter allegation, ¶ 550, adds nothing individuated: "repeated zero-locate trading on known zero-borrow days, coordinated timing across multiple accounts and entities on peak dates, exploitation of Threshold list mechanics to evade buy-ins, and trading patterns that neutralized positive corporate news." The Second Circuit found materially identical allegations "inadequate under Rule 9(b)," where the plaintiff alleged high-volume selling with coinciding price drops, a stock reacting negatively to positive news, and trade volumes exceeding settlement. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102-03 (2d Cir. 2007).

Plaintiff might argue that manipulation claims are held to a relaxed standard because the facts lie with the defendant. *See id.* at 102. That premise fails here. Plaintiff obtained Bisoke's customer-level trading records through *ex parte* discovery before it filed, and used them to plead its four account numbers, its 4,046 executions and its share totals. (D.I. 7, 8; ¶¶ 309, 378(c).) A plaintiff holding the

defendant's own trading records cannot invoke a rule written for plaintiffs who hold none. Whatever latitude *ATSI* affords, it supplies no allegation about what Bisoke did on any of the seven days it is alleged to have traded.

What remains is Paragraphs 312 and 377. That a broker's principal approved an account on the broker's own forms, and that the broker's record of one account carries an incomplete address field, are allegations about Opal's practice. Neither says Bisoke supplied anything false. And an allegation that a trader opened accounts as earlier ones approached position concentration thresholds does not make the culpable inference "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

**C. Plaintiff Concedes the PSLRA Bar, Then Pleads Around It**

Paragraph 571 acknowledges the bar in 18 U.S.C. § 1964(c) and purports to rely instead on wire fraud "without regard to whether the same conduct is also actionable as securities fraud." The Third Circuit forecloses that reasoning: "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses" where the same facts support securities fraud. *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999).[3]

[3] *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076 (N.D. Ill. 2016), *aff'd in part, vacated in part, and remanded*, 943 F.3d 328 (7th Cir. 2019), is not to the contrary. It held the bar inapplicable where a tax shelter scheme "only

Even if the bar did not apply, Count III would fail. Section 1962(c) requires that "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see id.* at 179 (one "must have some part in directing those affairs"). Paragraph 574 purports to satisfy that test, and the only conduct it identifies is a broker-dealer's. Lightspeed "operated and controlled the Short Request Window" and Opal "made the decision to introduce 41 customer accounts' short sale orders." Nothing in Count III states what Bisoke directed. A customer whose orders a broker accepts stands further from the operation of an enterprise than the outside accountants held not liable in *Reves*.

Common purpose fails too on Plaintiff's own authority. Paragraph 573 pleads *Boyle*, which holds that an association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009). It is the first two features that are missing, and this Circuit treats them as "necessary elements" of the enterprise. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366-67 (3d Cir. 2010). The purpose alleged is "generating trading profit through the sale of LNAI shares that had not been borrowed or located." (¶ 572.) That describes parallel self-

incidentally involved the underlying securities." *Id.* at 1116. Every predicate act pleaded here is a short sale of LNAI.

interested trading by roughly 150 unrelated parties, each of which would have traded exactly as pleaded had the others never existed.

Paragraph 586's § 1962(d) alternative does not rescue Count III. Plaintiff pleads conspiracy expressly to reach "those Defendants whose own conduct might not independently satisfy the operation-or-management test." Such a claim requires an agreement, which Plaintiff infers from "overlapping account relationships, common clearing infrastructure, and uniform pattern of execution and locate failure." (¶ 586.) Bisoke held no overlapping accounts and traded at one firm (¶ 312); it shared the clearing infrastructure with the 35 other Opal accounts of 33 other defendants, with whom no relationship is pleaded (¶ 378); and the locate failure Plaintiff calls uniform is Opal's, pleaded as to all 41 of Opal's accounts (¶ 551).

The two paragraphs that place Bisoke beside other defendants plead coincidence. Paragraph 338(f) pleads that Kraska sold short on a date Bisoke also sold; ¶ 343(e) pleads that Malecki sold short "three days before" Bisoke did. Neither alleges any communication, agreement or relationship.

### D. Count V Fails Whether or Not Delaware Recognizes the Claim It Pleads

Paragraph 602 pleads that defendants' trading "caused Lunai's breach of, or non-performance under," its Nasdaq listing agreement. That is a Restatement (Second) of Torts § 766A claim, which the Third Circuit has predicted Delaware would not entertain: "Delaware courts would not allow a tortious interference claim

based on an allegation that the defendant caused the plaintiff's performance to be more expensive or burdensome, since such an allegation would be 'too speculative and subject to abuse to provide a meaningful basis for a cause of action.'" *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010) (quoting *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 66 (3d Cir. 1994)).

A Delaware Superior Court has disagreed, but that disagreement does not help Plaintiff. In *Allen Family Foods, Inc. v. Capitol Carbonic Corp.*, the Court considering *Anderson*, concluded that "Section 766A is or should be the law of Delaware," and granted the motion to dismiss anyway, because the plaintiff "failed to plead a viable claim . . . under Section 766A or otherwise." 2011 WL 1205138, at *1 (Del. Super. Ct. Mar. 31, 2011).[4]

The SAC fails on that ground too. Plaintiff does not allege that Nasdaq breached or terminated the listing agreement. It alleges that its price fell, that the fall caused it to fail the Bid Price and Stockholders' Equity Rules, and that sustained price depression risked "bid-price deficiency and related sanctions." (¶¶ 600-602.) Paragraph 602 concedes Nasdaq rules "afford" a compliance period, and ¶ 361 pleads that plaintiff's extension request "remains pending." A chain running from

[4] *Allen Family Foods* is unreported, and the Nebraska Supreme Court has since declined to follow it. *Green Plains Trade Grp. LLC v. Archer Daniels Midland Co.*, 31 N.W.3d 577 (Neb. 2026).

third-party trading, through Plaintiff's own non-compliance, to a sanction a cure process may still prevent, is the speculation *Anderson* and *Gemini* both describe. *See Anderson*, 621 F.3d at 281; *Gemini*, 40 F.3d at 66.

Plaintiff's alternative interference with prospective relations theory fares no better. It requires a plaintiff to "identify a specific party who was prepared to [enter] into a business relationship but was dissuaded from doing so by the defendant[.]" *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017). Plaintiff pleads "existing and prospective investors and lenders." (¶ 602.) It names no one.

### E. Plaintiff Calls Short Selling Manipulation Without Pleading What Makes It So

"Manipulative" is a term of art. It "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976). Selling short is not that. *GFL*, 272 F.3d at 209. Neither is naked short selling. *Harrington*, 585 F. Supp. 3d at 423 ("short selling, even some naked short selling, is legal."). To be actionable, short selling "must be willfully combined with something more to create a false impression of how market participants value a security." *ATSI*, 493 F.3d at 101.

This element carries Count I on its own. Paragraph 548 pleads Rule 10b-5 in the rule's own words, charging that defendants "employed devices, schemes, or artifices to defraud," made untrue statements, and "engaged in acts, practices, and

courses of business which operated or would have operated as a fraud or deceit upon others." The first and third of those require no representation at all. Whatever becomes of the implied representation addressed in Part IV.A, Count I still requires a manipulative act by Bisoke.

The "something more" Plaintiff asserts is a list, and it is attributed to no one in particular. Paragraph 549 recites short sales without valid locates, fails to deliver, sham resets, marking the close, painting the tape, wash trades, and spoofing and layering, without naming an actor. Paragraph 564 repeats the list against "Defendants," a group of roughly 150 parties, and not one item is alleged as a Bisoke transaction. Charging a list of techniques to a collective does not allege that any defendant committed any of them. *Lum*, 361 F.3d at 224; *see* Part IV.B above.

Taken on their own terms, marking the close and painting the tape are allegations about when an order was entered and at what price; spoofing and layering, about orders placed and cancelled without an intention to execute; wash trades, about a party trading with itself. Each depends on transaction-level detail, and Plaintiff has Bisoke's: 4,046 executions across four numbered accounts. (¶ 378(c).) It pleads seven dates and seven share totals, and nothing about how, when or against whom any order was entered.

**F. Plaintiff Ties No Loss to Bisoke and the Loss It Pleads Is Not Its Own**

Plaintiff pleads that it sold its own stock during the period, through an at-the-market program under which "the number of shares issued was a direct function of the market price," and through a March 24, 2026 exchange of $828,770 in secured indebtedness for 3,909,293 shares and 1,433,621 warrants "priced at $0.21 per share." (¶ 563; *see* ¶ 386.) It pleads that each such sale "occurred at a price depressed by the manipulative trading pleaded herein." (¶ 563.) No connection between that price and Bisoke is pleaded.

Loss causation requires a plaintiff to "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *see McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007). Plaintiff supplies neither. It does not plead what LNAI would have traded at absent the conduct alleged, how many fewer shares it would have issued, or what the difference is worth. Its allegation is that it issued "a greater number of shares . . . than it would have been required to issue absent Defendants' manipulation," and it never says how many greater. (¶ 563.)

Nor is it connected to Bisoke. The depression is attributed to the collective trading of roughly 150 defendants over six months. Bisoke is alleged to have sold on seven days. (¶ 309.) No paragraph alleges that LNAI's price moved on any of those days, by how much, or in what direction. Plaintiff anchors the March 24

exchange to the March 17 session on which the lending market recorded no available inventory (¶ 563), and the only account-level failure it pleads in that window is the March 18 allocation, which it never attributes to a Bisoke account. *See* Part IV.A.2 above.

Plaintiff pleads that the at-the-market program existed and identifies not a single transaction under it: no date, volume or price.

The pleaded loss has a further problem. Paragraph 563 describes the injury as having "required Lunai to issue a greater number of shares, at greater dilution to its existing stockholders." In the exchange Lunai received what it bargained for, the discharge of $828,770 of secured indebtedness. Dilution harms the holders of the diluted equity, and those holders are not the plaintiff. The securities laws exist "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura*, 544 U.S. at 345.

### G. Counts IV and VII Ask This Court to Adopt a Presumption No Delaware Court Has Adopted

Delaware common-law fraud requires the plaintiff's justifiable reliance on a representation by the defendant. *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). Plaintiff does not allege any representation made directly to it. (¶ 615.) The implied representation it substitutes fails for the reasons above.

That leaves market-price reliance, which Plaintiff asserts twice and supports nowhere. Paragraph 552 invokes "the fraud-on-the-market presumption applicable to securities traded in an efficient market." Paragraph 588 goes further: "Delaware recognizes that a plaintiff's justifiable reliance may rest on the integrity of a market price . . . ." The authority paragraph 588 cites, *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983), states the five elements of Delaware fraud and says nothing about market price. No Delaware court has applied the presumption to a common-law fraud claim, and the Delaware Supreme Court has cited the contrary rule with approval. *Gaffin*, 611 A.2d at 474 (citing *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 533 (D. Me. 1991), for the proposition that the "fraud-on-the-market presumption of reliance is not available in state law fraud claims")).

The presumption belongs to Rule 10b-5 litigation. It substitutes for proof that a plaintiff read and relied on a *public misstatement*, and it is available to one who "traded the stock between the time the misrepresentation[] w[as] made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014); *Basic Inc. v. Levinson*, 485 U.S. 224, 241-47 (1988). Plaintiff pleads no misstatement by Bisoke, which ends the inquiry at the first element.

A state supreme court asked to import the presumption into common-law fraud refused, explaining that although fraud on the market "has a place in the securities law of this nation, it is a stranger to New Jersey's securities laws."

*Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1189 (N.J. 2000). The plaintiff there had at least forgone "an adequate federal remedy perfectly suited to her complaint." *Id.* at 1201. Plaintiff is pursuing that remedy in Counts I and II.

Count VII recites the same elements as Count IV. *Compare* ¶ 614 *with* ¶ 588. It adds only the express statement of the implied-representation theory at paragraphs 615 and 616, which fails for the reasons given in Part IV.A. It states no independent claim.

### H. Counts II and VI Rest on a Criminal Statute and an Unpleaded State of Mind

Civil conspiracy is not an independent tort under Delaware law. "[I]t is essential that there be an underlying wrongful act, such as a tort or a statutory violation." *Tani v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1025 (D. Del. 2011). Plaintiff's asserted predicate includes wire fraud under 18 U.S.C. § 1343, and "criminal statutes such as 18 U.S.C. § 1343, which criminalizes wire fraud . . . provide no private right of action." *Chaudhry v. HCL Techs. Ltd. Corp.*, No. 24-662-GBW, 2025 WL 326782, at *2 (D. Del. Jan. 29, 2025) (quoting *Obianyo v. Tennessee*, 518 F. App'x 71, 72 (3d Cir. 2013)). The remaining predicates fail for the reasons above, and Count VI fails with them.

Count II demands more still. Section 9(f) imposes liability only on a person who "willfully participates" in a violation, 15 U.S.C. § 78i(f), and a claim under it requires both manipulative motive and willfulness. *DeKalb Cnty. Pension Fund v.*

*Transocean Ltd.*, 817 F.3d 393, 403 (2d Cir. 2016). Paragraph 561 infers a purpose to induce from trading "concentrated in pre-market and other thin-liquidity windows" and from "coordinated timing across nominally unrelated broker-dealers." Plaintiff pleaded no pre-market figure for Bisoke, and the coordination it pleaded is the same-day and three-days-apart trading of ¶¶ 338(f) and 343(e).

## V. CONCLUSION

The Second Amended Complaint should be dismissed as to Bisoke. Two defects cannot be cured by amendment: the § 1964(c) bar turns on the character of the conduct pleaded, not how it is described, and § 1343 confers no private right of action in any pleading a civil plaintiff files. Count III and the § 1343 predicate of Count VI should be dismissed with prejudice. Plaintiff has amended twice, the first time after months of *ex parte* third-party discovery and the second without Rule 15 leave or consent. Rule 15's liberality does not support a third attempt at counts no amendment can save.[5] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the federal Counts I-III go (I-III), the Court should decline supplemental jurisdiction over the Delaware Counts IV-VII. 28 U.S.C. § 1367(c)(3).

---

[5] Counsel pleaded the same theory against Doe defendants last year before dismissing the case without serving anyone. *Datavault AI, Inc. v. Does 1-50*, No. 1:25-cv-07815 (N.D. Ill. Oct. 28, 2025). Their experiment should not continue here.

Dated: September 4, 2025

Respectfully submitted,

BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP

*/s/ Kristen Healey Cramer*
Kristen Healey Cramer (#4512)
Noelle B. Torrice (#5957)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Tel: (302) 442-7010
kcramer@beneschlaw.com
ntorrice@beneschlaw.com

Of Counsel:

Ashwin J. Ram (*pro hac vice* forthcoming)
BUCHALTER LLP
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

*Counsel for Bisoke LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Standing Order Regarding Briefing in All Cases (D. Del., entered Nov. 10, 2022), the undersigned certifies that this brief contains 4,999 words, as counted by the word-processing system used to prepare it, and is set in 14-point Times New Roman. The brief complies with the applicable limit of 5,000 words (250 words × the 20 pages) allowed by D. Del. L.R. 7.1.3(a)(4).

Dated: September 4, 2025

Respectfully submitted,

BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP

*/s/ Kristen Healey Cramer*
Kristen Healey Cramer (#4512)
Noelle B. Torrice (#5957)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Tel: (302) 442-7010
kcramer@beneschlaw.com
ntorrice@beneschlaw.com

Of Counsel:

Ashwin J. Ram (*pro hac vice* forthcoming)
BUCHALTER LLP
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

*Counsel for Bisoke LLC*