**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LUNAI BIOWORKS, INC.,<br><br>Plaintiff,<br><br>v.<br>LIGHTSPEED FINANCIAL SERVICES GROUP LLC, *et. al.*,<br><br>Defendants. | Civil Action No. 26-00549-CFC<br><br>JURY TRIAL DEMANDED |

# PLAINTIFF LUNAI BIOWORKS, INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT BISOKE, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT


| | |
|---|---|
| OF COUNSEL:<br><br>Jacob S. Frenkel (*pro hac vice*)<br>Brian S. Yu (DE ID 6482)<br>DICKINSON WRIGHT PLLC<br>1825 I Street, N.W., Suite 900<br>Washington, DC 20006<br>Tel.: (202) 457-0160<br>jfrenkel@dickinsonwright.com<br>byu@dickinsonwright.com | Respectfully submitted,<br><br>**FOX ROTHSCHILD LLP**<br><br>/s/ *Sidney S. Liebesman*<br>Sidney S. Liebesman (DE ID 3702)<br>Carmella L. Cinaglia (DE ID 7032)<br>1201 N. Market Street, Suite 1200<br>Wilmington, DE 19801<br>Tel.: (302) 622-4237<br>sliebesman@foxrothschild.com<br>ccinaglia@foxrothschild.com<br>*Attorneys for Plaintiffs* |


Dated: September 9, 2026

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS .......................................... 1

SUMMARY OF ARGUMENT .................................................................. 2

STATEMENT OF FACTS ...................................................................... 5

ARGUMENT ........................................................................................ 8

A. The SAC Must Be Read as a Whole. ............................................... 8

B. The SAC Pleads Deception With the Required Particularity. .......................... 9

1. The Implied Representation Runs to the Market, Not Only to Opal...... 9

2. The SAC Ties Bisoke to the Failures to Deliver. ................................. 10

3. The SAC Pleads Dual Liability, Not Broker-Only Liability. ............... 11

C. Scienter Is Pled With Individualized Particularity. ....................................... 12

D. Count III Survives Under Both RICO Theories. .......................................... 14

E. Count I Pleads Manipulation Beyond Ordinary Short Selling. ...................... 17

F. Loss Causation Is Pled Under the Manipulation Standard. ............................ 18

G. Count V Pleads an Actual Breach, Not a Speculative Burden. ..................... 19

H. Counts II and VI Plead Willfulness and an Independent Predicate. .............. 20

CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Allen Family Foods, Inc. v. Capitol Carbonic Corp.*,
2011 WL 1205138 (Del. Super. 2011) ....................................................20

*Anderson v. Wachovia Mortg. Corp.*,
621 F.3d 261 (3d Cir. 2010)....................................................19, 20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................................4, 14, 17

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
189 F.3d 321 (3d Cir. 1999)....................................................15

*DeKalb Cty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016)....................................................20

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................4, 18, 19

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938)....................................................20

*Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
40 F.3d 63 (3d Cir. 1994)....................................................19

*GFL Advantage Fund, Ltd. v. Colkitt*,
272 F.3d 189 (3d Cir. 2001)....................................................4, 17

*Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*,
585 F. Supp. 3d 405 (S.D.N.Y. 2022) ....................................................11, 17

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)....................................................8

*McCabe v. Ernst & Young, LLP*,
494 F.3d 418 (3d Cir. 2007)....................................................18

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) .......... 15

*Salinas v. United States*,
522 U.S. 52 (1997) .......... 16

*U.S. Sec. & Exch. Comm'n v. Mintz*,
723 F. Supp. 3d 386 (D.N.J. 2024) .......... 10

*Tani v. FPL/Next Era Energy*,
811 F. Supp. 2d 1004 (D. Del. 2011) .......... 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 3, 8, 13

**Statutes and Rules**

Fed. R. Civ. P. 8 .......... 18

Fed. R. Civ. P. 9(b) .......... 8, 11, 21

Fed. R. Civ. P. 12(b)(6) .......... 1, 8

Exchange Act § 21D, 15 U.S.C. § 78u-4 (PSLRA) .......... 4, 14, 21

Exchange Act § 9(a), 15 U.S.C. § 78i(a) .......... 3, 11, 18

Exchange Act § 9(f), 15 U.S.C. § 78i(f) .......... 20

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 .......... 3, 11, 12, 17, 18

SEC Rule 10b-21, 17 C.F.R. § 240.10b-21 .......... 2, 9, 10

Reg SHO, 17 C.F.R. § 242.203(b)(1) .......... 9

18 U.S.C. § 1343 (wire fraud) .......... 14, 21

18 U.S.C. § 1962(c), (d) (RICO) .......... 14

**NATURE AND STAGE OF THE PROCEEDINGS**

Defendant Bisoke, LLC's Motion asks the Court to dismiss it from a naked short-selling scheme it does not dispute joining. Bisoke does not contest that it sold short 1,301,690 shares of Lunai Bioworks, Inc. (Nasdaq: LNAI) ("Lunai") across 4,046 executions in four accounts, opened at the same broker in a pattern the Second Amended Complaint ("SAC") pleads was designed to evade scrutiny, on seven specific dates spanning six months, without a single locate on record. (SAC ¶¶ 194, 309, 310, 312, 378(c).) That scheme forced Lunai to issue millions of additional shares and warrants at manipulated, depressed prices and diluted stockholders who had no part in the manipulation and no way to detect the fraud. Bisoke's Motion is not a defense on the merits; it is a bid to be dismissed from a scheme Bisoke does not deny joining.

Lunai filed the SAC on August 26, 2026, after obtaining, through expedited third-party discovery this Court authorized, the account-level trading, locate, and clearing records of the customers and broker-dealers who sold short LNAI without valid locates between November 5, 2025 and May 4, 2026. (D.I. 7, 8, 37.) Bisoke, served August 14, 2026, now moves under Rule 12(b)(6) to dismiss every count. Bisoke's brief isolates individual paragraphs from a 621-paragraph pleading and reads each alone, asking the Court to conclude that nothing links Bisoke to the scheme it does not dispute occurred. That inverts the governing standard. Read as a

whole, with reasonable inferences drawn in Plaintiff's favor, the SAC states a plausible, particularized claim against Bisoke on every count, and this Court should deny the Motion.

**SUMMARY OF ARGUMENT**

1. Deception does not rest on Bisoke lying to Opal Securities, Inc. ("Opal"). It rests on the implied representation Reg SHO and Rule 10b-21 attach to every short sale order – made to the market, counterparties, and the clearing system regardless of what the broker requested internally. (SAC ¶¶ 615-16.) Opal's total failure to seek a locate for any of its 41 accounts does not immunize Bisoke, which exploited that vacuum across four accounts opened, on Plaintiff's well-pleaded allegation, to stay ahead of position-concentration scrutiny. (SAC ¶ 312.)

2. The SAC ties Bisoke to a failure to deliver ("FTD"). Bisoke sold short 820,654 shares on March 17, 2026, a session with zero recorded lendable inventory and a pre-borrow-required status, through accounts including one whose Opal file lists "ADDRESS UNKNOWN" and which Defendant Zachary Goldberg, Opal's Chief Executive Officer and Registered Options Principal, approved personally. (SAC ¶¶ 309(d), 377, 378(c).) The next day, the clearing firm's DTC account recorded a 5,081,150-share FTD, of which 4,640,053 shares were assigned to three Opal accounts. (SAC ¶ 376.) Plaintiff need not identify, pre-discovery, which

accounts absorbed every share to plead a particularized connection between Bisoke's trading and the mass failure that followed it by 24 hours.

3. Bisoke's Motion quotes Paragraph 536 to argue Plaintiff conceded the locate obligation belongs to the broker alone. Paragraph 536 says the opposite: it rejects SageTrader's attempt to disclaim its own Reg SHO liability, expressly preserving "whatever liability its customer separately bears." (SAC ¶ 536.) Paragraph 14, which Bisoke's brief omits, pleads that dual-liability structure directly. (SAC ¶ 14.) No count here is brought under Reg SHO; Bisoke's exposure arises under Rule 10b-5, Section 9(a), and common-law fraud, none of which Reg SHO's broker-side duty displaces.

4. Scienter rests on individualized allegations far beyond the "40-account book": seven trading dates over six months with no locate on record, four against an explicit pre-borrow-required or zero-inventory record (SAC ¶ 309(a)-(g)); the serial opening of four accounts "in rapid succession as each prior account approached position concentration thresholds" (SAC ¶ 312); and the fabricated-address, principal-approved account that sold short during Bisoke's single largest session. (SAC ¶¶ 377, 378(c).) *Tellabs* asks whether the inference of scienter is at least as compelling as any competing inference, not whether each defendant's conduct occupies a non-overlapping paragraph. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007).

5. The Private Securities Litigation Reform Act (PSLRA) bar on RICO claims resting on securities fraud does not require dismissal of Count III now, and it survives independently under the conspiracy theory at Paragraph 586, which requires only an agreement – plausibly inferred from parallel conduct, shared broker infrastructure, threshold-driven account structuring, and contemporaneous trading with co-defendants on May 1 and May 4, 2026. (SAC ¶¶ 338(f), 343(e), 586.)

6. Count I alleges the "something more" *ATSI Communications* and *GFL Advantage Fund* require beyond ordinary short selling: deceptive locate practices combined with document-based proof of zero lendable inventory on four of Bisoke's trading dates, combined with threshold-evading account structuring. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 211 (3d Cir. 2001). Count V alleges an actual breach of Lunai's Nasdaq listing agreement, supported by Delaware Superior Court authority recognizing the tort Bisoke says Delaware would reject outright. Loss causation is pled through the one-week link between the March 17 zero-inventory session and continuing through the roughly 50% increase in Lunai's share count under its at-the-market program during Bisoke's trading window – a manipulation theory to which *Dura Pharmaceuticals'* disclosure-based causation framework does not apply.

7. For these reasons, developed below, the Court should deny Bisoke's Motion in its entirety.

## STATEMENT OF FACTS

The SAC names six broker-dealers, two individuals who own or control two of them, and roughly 150 of those firms' customers, pleading a coordinated, six-month pattern of naked short selling of LNAI common stock between November 5, 2025 and May 4, 2026. (SAC ¶ 6.) Opal, the introducing broker through which Bisoke traded, requested a locate in LNAI from no source, for any of its 41 customer accounts, at any time, even as its customers sold short more than 20.5 million shares. (SAC ¶¶ 17(c), 375.) On five sessions when the securities lending desk granted locates in LNAI to other correspondents – over 1.15 million shares across 179 requests – Opal's customers nonetheless sold short 2,556,465 LNAI shares without Opal ever asking. (SAC ¶¶ 371-72.)

Bisoke is a U.S. Virgin Islands limited liability company. (SAC ¶ 194.) It held four registered trading accounts at Opal – ending 014, 048, 053, and 061 – through which it executed all of its LNAI short sales. (SAC ¶¶ 194, 378(c).) On each of seven dates – November 5 and 25, 2025; March 12, 17, and 26, 2026; and April 7 and May 4, 2026 – Bisoke sold a specific, pleaded number of shares short, with no locate on record and, for the four most recent dates, an explicit pre-borrow-required status or recorded absence of lendable inventory. (SAC ¶ 309(a)-(g).) In aggregate, Bisoke

executed approximately 1,301,690 LNAI short sale shares across 4,046 executions – one of the largest volumes of any customer defendant named in this action. (SAC ¶¶ 6, 310, 378(c).)

Of the four Bisoke accounts opened in rapid succession (SAC ¶ 312), the SAC identifies account 053's Opal address as "ADDRESS UNKNOWN," approved, like the others, "by Defendant Goldberg personally, on Opal's own account-opening forms." (SAC ¶ 377.) That account sold short on March 17, 2026, the session during which Bisoke's four accounts together sold 820,654 shares against a record of "no lendable inventory in LNAI… and a status of pre-borrow required." (SAC ¶¶ 309(d), 377.) The clearing firm's DTC account allocated 4,640,053 of a 5,081,150-share FTD to three Opal accounts the next day. (SAC ¶ 376.)

Bisoke's trading did not occur in isolation. On May 4, 2026, one of Bisoke's seven pleaded dates, Bisoke and SageTrader executed naked short sales of nearly two million LNAI shares in aggregate, the same date co-defendant Marlena Marta Kraska separately sold short. (SAC ¶ 338(f).) Three days earlier, co-defendant Wojciech Malecki's naked short sale immediately preceded that May 4 trading. (SAC ¶ 343(e).)

During the same period, Lunai sold its own stock through an at-the-market ("ATM") program – under which the lower the price, the more shares required to raise the same sum – and through an additional shares and warrants transaction, one

week after the March 17 zero-inventory session. (SAC ¶¶ 386, 563.) LNAI fell from $0.97 to $0.37 by February 27, 2026 (SAC ¶ 243), and Lunai's share count rose roughly 50%, from 24,187,356 to 36,271,119 shares, between February 11 and May 15, 2026 – spanning five of Bisoke's seven pleaded sessions. (SAC ¶¶ 309(c)-(g), 383.) That dilution was a significant factor in Lunai's actual non-compliance with Nasdaq's Bid Price and Stockholders' Equity Rules, each an independent listing condition. (SAC ¶¶ 384, 600-602.)

The SAC also implicates the common clearing infrastructure behind Bisoke's trading, though the clearing firm itself is not separately named. Opal, Lightspeed Financial Services Group LLC ("Lightspeed"), and Cobra Trading Inc. ("Cobra") each introduced customer orders to that single clearing firm, which administered the one securities lending desk and locate mechanism on which each depended and was no arm's-length utility: Lightspeed's own Form BD discloses common ownership with the clearing firm's holding company. (SAC ¶¶ 25, 27.) The 5,081,150-share FTD at that firm on March 18 alone exceeded 20% of LNAI's float. (SAC ¶¶ 376, 383.) Independent records confirm the same zero-inventory reality market-wide: Cobra's correspondent channel requested 124,165,105 LNAI shares and received 255,048; Lightspeed requested 13,024,998 and received none. (SAC ¶¶ 397, 485.) That infrastructure is not incidental to this case: Opal's correspondent clearing arrangement with the same firm has been in effect since May 20, 2022, more than

three years before the class period began, and Defendant Zachary Goldberg – the same Opal principal who personally approved Bisoke's four accounts – personally countersigned that clearing firm's own margin and loan agreement on another Opal account as the correspondent broker's signature guarantee. (SAC ¶¶ 25, 31.)

## ARGUMENT

### A. The SAC Must Be Read as a Whole.

On a Rule 12(b)(6) motion, the Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor, asking only whether the Complaint states a plausible claim. Fed. R. Civ. P. 12(b)(6). Rule 9(b) requires particularity as to the fraud alleged; it does not require a wholly self-contained set of paragraphs, untethered from the common scheme, for each of roughly 150 defendants. Fed. R. Civ. P. 9(b). Where scienter is at issue, *Tellabs* instructs the Court to weigh the complaint's allegations holistically against any opposing inference, not to test each paragraph in isolation. *Tellabs*, 551 U.S. at 322-24 (2007); *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252-53 (3d Cir. 2009).

Bisoke's brief does the opposite: it isolates paragraphs from context and asks the Court to conclude the SAC states nothing. Applying the correct standard compels the opposite conclusion. Nor does reading the SAC as a whole collapse into improper group pleading – as shown below, the allegations against Bisoke are individualized by account number, date, share count, and inventory record.

**B. The SAC Pleads Deception With the Required Particularity.**

Every count Bisoke seeks to dismiss rises or falls on the same question: whether Bisoke deceived anyone by selling short into a market it knew had nothing to lend. Rather than confront that question, Bisoke's Motion relitigates who Reg SHO regulates and mines isolated sentences from a 621-paragraph pleading for concessions Plaintiff never made. Neither maneuver survives contact with the SAC, for three independent reasons set out below.

1. <u>The Implied Representation Runs to the Market, Not Only to Opal.</u>

Bisoke treats deception as though it collapses into whether Bisoke lied to Opal in response to a request Opal never made. That is not the theory pled. Every short sale order carries, by the structure of Reg SHO and the antifraud rule the SEC adopted for naked short selling, an implicit representation that the seller has borrowed the security, arranged to borrow it, or has reasonable grounds to believe it can be borrowed and delivered by settlement. (SAC ¶ 616 (citing 17 C.F.R. §§ 242.203(b)(1), 242.10b-21; 73 Fed. Reg. 61,666).) That representation runs "to the market…, to the counterparties who took the other side of each… order, and to the clearing and settlement system," not exclusively to the introducing broker. (SAC ¶ 615.)

That Opal never asked whether Bisoke had a locate is why the scheme worked, not a limit on pleading it against the customer who exploited that silence. A customer

who sells short seven times in six months into a broker's total absence of inquiry, against records repeatedly showing zero inventory, has made Rule 10b-21's implied representation to the market and clearing system knowing it false. *U.S. Sec. & Exch. Comm'n v. Mintz*, 723 F. Supp. 3d 386, 395 (D.N.J. 2024), involved one pattern of broker-directed deception; it does not define the universe the adopting release covers, which reaches deception of "a broker-dealer, participant of a registered clearing agency," or another person. (SAC ¶ 616.) Nothing in Rule 10b-21 or its adopting release confines the representation to a broker who happens to ask; the Securities and Exchange Commission adopted the Rule precisely because sellers cannot be trusted to volunteer the truth about their locate status, and a broker's silence does not convert a false representation into no representation at all.

2. <u>The SAC Ties Bisoke to the Failures to Deliver.</u>

Bisoke argues the word "Bisoke" never appears beside an FTD allegation. That ignores Paragraph 309(d), which pleads a dated, quantified FTD tied to Bisoke's own March 17 trade, independent of any later firm-wide accounting of the shortfall. Paragraph 377 corroborates the irregularity: one of Bisoke's own four accounts – the one with an unknown address, tied to Bisoke's account set at Paragraph 378(c) – was hand-approved by Defendant Goldberg and traded during that same session. Paragraph 376 supplies context: the very next day, the clearing

firm's DTC account carried the period's largest FTD, confirming the zero-inventory condition Bisoke sold into was real and had consequences at Bisoke's own broker.

*Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405, 422 (S.D.N.Y. 2022), dismissed FTD allegations offered "without pointing to any specific examples." The instant SAC points to a specific date, share count, account, and clearing firm inventory record – the antithesis of the conclusory pleading that *Harrington* addressed.

Bisoke may respond that its own accounts do not appear among the two remaining, already-named accounts within the 4,640,053-share allocation. That is unremarkable, not exculpatory: the fail-allocation file addresses only the mass shortfall carried at the clearing firm's DTC account on two specific dates; it does not purport to catalog every account whose short sales lacked a valid locate across the six-month scheme. Bisoke's liability under Rule 10b-5 and Section 9(a) does not depend on inclusion in that one document. Rule 9(b) requires, and Paragraph 309(d) supplies, a dated, particularized allegation that Bisoke itself sold short into a market with zero recorded inventory; Bisoke cannot refute that allegation by pointing to a different record answering a different question.

3. <u>The SAC Pleads Dual Liability, Not Broker-Only Liability.</u>

Bisoke's Motion builds an argument on one sentence lifted from Paragraph 536: that the locate obligation "attaches to the broker-dealer…, not to the customer."

Read in context, Paragraph 536 addresses SageTrader's likely contention that, as an agent, it bears no Reg SHO exposure. (SAC ¶ 536.) The SAC responds that Rule 203(b)(1) attaches regardless of principal or agent status – and the very next sentence, which Bisoke omits, confirms that duty exists "independently of whatever liability its customer separately bears." *Id.* That is the opposite of the concession Bisoke attributes to it.

Paragraph 14, which Bisoke's brief never cites, pleads the customer's independent exposure directly: the account holder "is liable for its own short sales" and is "not relieved of that liability by the fact that a broker-dealer accepted the orders." (SAC ¶ 14.) That dual structure is how Reg SHO, Rule 10b-5, and Section 9(a) fit together: the regulation binds the broker to verify before accepting an order, while the antifraud provisions independently reach the customer whose own order carries the implied representation described above. No count here arises under Reg SHO itself – a point Bisoke concedes before treating Reg SHO's broker-facing duty as though it forecloses the fraud claims Lunai actually pled.

**C. Scienter Is Pled With Individualized Particularity.**

Bisoke characterizes the SAC's scienter allegations as describing only a "40-account book," never Bisoke specifically. That ignores the paragraphs pleading Bisoke's own conduct in granular detail. Paragraph 551 describes Opal's own scienter as independently establishing Opal's state of mind; it does not purport to be

the only scienter allegation as to any individual customer, whose scienter rests on separate facts pled elsewhere.

The facts as to Bisoke are substantial. First, Paragraph 309's seven dated instances of Bisoke's short selling are each independently alleged with no locate on record, four against an explicit pre-borrow-required or zero-inventory record – individualized by date, share count, and inventory record, not a generic book-wide characteristic. Second, Paragraph 312 pleads that Bisoke "opened four separate accounts with the same broker-dealer, in rapid succession as each prior account approached position concentration thresholds." Structuring a position across successive accounts timed to a threshold is not neutral and has no apparent purpose other than avoiding the scrutiny a single, larger account would have attracted, and *Tellabs* asks only whether that inference is at least as compelling as any competing one – not whether a prior court has already blessed such a particular fact pattern. Bisoke's brief does not explain, and the SAC need not anticipate, what innocent reason accounts for opening four sequential accounts at the identical broker precisely as each approached a threshold; it offers only the abstract possibility that other reasons for opening multiple accounts might exist.

Third, the account with the deficient address record, approved by Opal's own principal, sold short during Bisoke's single largest session, against a record of zero lendable inventory. (SAC ¶¶ 309(d), 377, 378(c).) *Tellabs* does not ask whether an

innocent explanation for these facts is conceivable; it asks whether the inference of scienter is at least as compelling as any competing inference the facts support. 551 U.S. at 324. Weighing an innocent explanation for this three-part pattern – sustained locate-less selling, threshold-driven account structuring, and a fabricated-identity account trading heaviest on the worst inventory day pleaded in the case – against the inference the SAC draws, the latter is, at minimum, equally compelling, which is all the pleading stage requires. *ATSI Communications* fares no better for Bisoke: that plaintiff pled only generic, market-wide correlations, 493 F.3d at 102-03, while the SAC pleads Bisoke's own transaction-specific dates, share counts, and inventory records – precisely the detail *ATSI* found lacking.

Motive reinforces this pattern: the SAC alleges Bisoke profited "no less than millions or tens of millions of dollars" directly from this trading, a concrete personal stake that corroborates rather than substitutes for the particularized conduct above. (SAC ¶ 308.)

**D. Count III Survives Under Both RICO Theories.**

The SAC pleads Count III in the alternative: the substantive violation of 18 U.S.C. § 1962(c), and independently, the conspiracy theory of Section 1962(d). (SAC ¶¶ 571-75, 586.) Both survive here. On the PSLRA bar, Paragraph 571 pleads that Plaintiff relies on the independently indictable wire-fraud predicate under 18 U.S.C. § 1343, actionable "without regard to whether the same conduct is also

actionable as securities fraud." Whether the conduct pled is "the same conduct" for Section 1964(c) purposes is fact-bound and premature before the record establishes what the wire transmissions conveyed. *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999), forecloses relabeling securities fraud as wire fraud; it does not require dismissal wherever a complaint separately alleges both, without examining whether the predicates share identical elements and conduct. Reading the bar to reach the conspiracy theory coextensively with the substantive claim it would otherwise support proves too much: it would read Section 1962(d) out of every case whose predicate pattern happens to involve securities, a result the statute's text does not compel on a motion addressed only to pleading sufficiency.

Bisoke is correct that *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), requires operation or management of the enterprise, and that the paragraphs describing Lightspeed's, Cobra's, and Opal's conduct speak to those broker-dealers. But Count III need not show Bisoke itself managed the enterprise, because Paragraph 586 pleads Section 1962(d) conspiracy "independently of the substantive violation," reaching defendants "whose own conduct might not independently satisfy the operation-or-management test." An association-in-fact enterprise under Section 1962(d) need only satisfy *Boyle*'s structural requirements of a common purpose, relationships among its members, and longevity sufficient to pursue that purpose – elements the SAC pleads through the shared clearing infrastructure and

six-month coordinated trading period described in Part III above. That clearing relationship predates the fraud by more than three years and was personally guaranteed by Opal's own principal – a corporate relationship of exactly the kind Boyle's longevity element contemplates, not an ad hoc grouping assembled for this scheme. (SAC ¶¶ 25, 31.) *Boyle v. United States*, 556 U.S. 938, 946 (2009). A conspiracy under Section 1962(d) requires only an agreement that the enterprise's affairs would be conducted through racketeering activity; a conspirator need not personally commit the predicate acts. *Salinas v. United States*, 522 U.S. 52, 65-66 (1997). That agreement may be inferred from parallel conduct and plus factors pled with sufficient specificity to render the inference plausible.

The SAC pleads those factors as to Bisoke: it traded exclusively through the broker whose six-month refusal to request a single locate for any account made the scheme possible (SAC ¶¶ 375, 551); it structured its own accounts to remain under detection thresholds (SAC ¶ 312); and it traded in specific, pleaded proximity to co-defendants Kraska's, SageTrader's, and Malecki's own naked short sales on May 1 and May 4, 2026. (SAC ¶¶ 338(f), 343(e).) Whether this pattern proves an actual agreement is a question for summary judgment; at the pleading stage, it states a plausible one.

**E. Count I Pleads Manipulation Beyond Ordinary Short Selling.**

Plaintiff does not dispute that short selling, even naked short selling, is not automatically unlawful. *GFL Advantage Fund, Ltd.*, 272 F.3d 189 at 209; *Harrington*, 585 F. Supp. 3d at 422-23. *ATSI* requires that short selling be "willfully combined with something more to create a false impression of how market participants value a security." 493 F.3d at 101. The SAC pleads exactly that: deceptive locate practices combined with document-based proof of zero lendable inventory on four of Bisoke's trading dates, combined with account structuring to evade concentration monitoring – the "something more" *ATSI* demands and ATSI's own complaint lacked.

Count I also rests independently on Rules 10b-5(a) and (c), which reach a scheme to defraud or a course of business operating as a fraud, without requiring an affirmative misrepresentation at all. (SAC ¶ 548.) Bisoke's six-month course of locate-less selling through structured accounts, on days increasingly documented as lacking borrowable supply, is itself that course of business, independent of the implied-representation theory above. The SAC need not prove at the pleading stage that Bisoke personally executed the spoofing or wash-trade techniques pled against the broader scheme; naked short selling combined with the deceptive-locate and structuring evidence described above independently states Count I as to Bisoke.

**F. Loss Causation Is Pled Under the Manipulation Standard.**

Bisoke measures loss causation against *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), and *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-28 (3d Cir. 2007), both addressing the showing required where a misrepresentation is later corrected by a truth-revealing disclosure. The SAC does not plead that theory. A manipulation claim under Section 9(a) and Rule 10b-5's manipulative-device theory turns on whether transactions occurred at a price affected by the manipulative trading and whether that trading caused the distortion – not on a corrective disclosure. *Dura*'s framework, built around the mechanics of a later-revealed misstatement, does not transplant cleanly onto a claim that the market price itself was continuously distorted by undisclosed naked short selling throughout the period in which Bisoke transacted.

The SAC pleads more than a bare, unconnected dilution claim. It pleads a specific, one-week causal chain running from the March 17, 2026 zero-inventory session, through Bisoke's continued short selling on March 26 and April 7, to the below-market March 24 debt exchange and the roughly 50% ATM-driven share-count increase during that same window. (SAC ¶¶ 309(d)-(f), 383, 386, 563.) Rule 8 does not require Plaintiff to plead, before expert discovery, the precise dollar depression; it requires the plausible causal nexus these specific dates, share counts, and pricing already supply. Fed. R. Civ. P. 8.

Nor is the injury a pass-through of ordinary shareholder dilution. Lunai itself – the issuer, not its shareholders – was forced to issue more shares and warrants than an undistorted price would have required, including to raise the same sum under its ATM program. (SAC ¶¶ 386, 563.) That is a first-party loss to the issuer, not the indirect harm *Dura*'s concern about turning the securities laws into "broad insurance against market losses" addresses. 544 U.S. at 345. That other defendants also sold short LNAI concurrently does not defeat causation as to Bisoke; a manipulation claim need not identify a sole cause where, as here, multiple actors' concurrent conduct contributed to the same distortion.

**G. Count V Pleads an Actual Breach, Not a Speculative Burden.**

*Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010), and *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 66 (3d Cir. 1994), address a different theory: conduct that made a plaintiff's performance "more expensive or burdensome." Paragraph 602 does not allege that Lunai's compliance merely became costlier. It alleges that Defendants' manipulative trading caused Lunai's actual non-compliance with Nasdaq's Bid Price and Stockholders' Equity Rules, "each an independent condition of continued listing." (SAC ¶ 602.) That is an actual breach, caused directly and foreseeably by the pleaded price distortion, not the speculative chain *Anderson* and *Gemini* found too attenuated.

That Nasdaq affords a compliance period before delisting does not erase the breach; it mitigates the sanction without curing the non-compliance Defendants caused. Delaware authority confirms "Section 766A is or should be the law of Delaware." *Allen Family Foods, Inc. v. Capitol Carbonic Corp.*, 2011 WL 1205138, at 1 (Del. Super. 2011). That decision considered and rejected *Anderson*'s contrary prediction before so holding, *id.* at 6, and dismissed the claim before it only for failure to plead a viable theory – not because Delaware rejects Section 766A. A federal *Erie* (*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)) prediction about unsettled state law yields to a later, on-point state-court decision resolving the question the federal court could only guess at; *Allen Family Foods* is that decision, and it controls here. The SAC's allegation of an actual, rule-defined breach – not a speculative increase in burden – is precisely the viable pleading that decision found missing in the case before it.

**H. Counts II and VI Plead Willfulness and an Independent Predicate.**

Sections 9(a)(2) and 9(f) require a defendant to act willfully and with a manipulative motive to induce the purchase or sale of a security by others. *DeKalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 403 (2d Cir. 2016). Paragraph 561 pleads that purpose through a specific pattern, not a bare label: trading concentrated in thin-liquidity windows to maximize price impact per share traded; locate failures and sham resets designed to create a false appearance of bona fide,

settled supply that would influence other market participants' trading decisions; and coordinated timing across nominally unrelated broker-dealers and customer accounts. (SAC ¶ 561.) No defendant announces its manipulative purpose in advance; the pattern itself is the evidence, and the SAC pleads it as to Bisoke with the particularity Rule 9(b) and the PSLRA both demand.

Count VI, civil conspiracy under Delaware law, requires only "an underlying wrongful act, such as a tort or a statutory violation." *Tani v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1025 (D. Del. 2011). Bisoke's attack on the § 1343 wire-fraud predicate, even if successful, does not reach the independent wrongful act Count VI may rest on – the securities-law violations pled in Counts I and II, themselves sufficient statutory violations regardless of the Section 1343 predicate's fate. Bisoke's Motion does not separately address this independent basis for Count VI, and that silence is itself reason enough to deny dismissal of that count.

## CONCLUSION

This is not a dispute over paperwork or one trader's aggressive tactics. It is a case about an engineered mechanism – six broker-dealers, the common clearing infrastructure they shared, and roughly 150 customers who traded through it – that operated for six months as a coordinated means of flooding the market with LNAI shares no one had borrowed, could borrow, or ever intended to deliver, while extracting profit from the price collapse that naked selling on that scale necessarily

produced. Bisoke was not swept up in someone else's scheme; it was a knowing participant, opening account after account timed to outrun the scrutiny its own broker never provided, trading heaviest on the session its own clearing firm's shelves were bare, and doing so within days of co-defendants selling the identical security in the identical pattern. That convergence is not coincidence – it is the signature of a pattern of racketeering activity conducted through a common enterprise, which is precisely why the SAC pleads it under Section 1962. Reading Bisoke's conduct one isolated paragraph at a time would credit the very device that made the scheme work in the first place: spreading responsibility across enough accounts, brokers, and participants that no single piece, viewed alone, looks like the whole. Innocent stockholders and Lunai itself bore the cost of that design, and the Court should not let the architecture of the fraud succeed a second time by shielding one of its participants from suit. Lunai respectfully requests that the Court deny Bisoke's Motion to Dismiss the Second Amended Complaint in its entirety.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ *Sidney S. Liebesman*
Sidney S. Liebesman (DE ID 3702)
Carmella L. Cinaglia (DE ID 7032)
1201 N. Market Street, Suite 1200
Wilmington, DE 19801
Tel.: (302) 622-4237
sliebesman@foxrothschild.com
ccinaglia@foxrothschild.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Jacob S. Frenkel (*pro hac vice*)
Brian S. Yu (DE ID 6482)
DICKINSON WRIGHT PLLC
1825 I Street, N.W., Suite 900
Washington, DC 20006
Tel.: (202) 457-0160
jfrenkel@dickinsonwright.com
byu@dickinsonwright.com

Dated: September 9, 2026

**CERTIFICATION PURSUANT TO NOVEMBER 10, 2022 STANDING ORDER**

Pursuant to Judge Connolly's November 10, 2022 Standing Order, the undersigned certifies that this brief is set in 14-point Times New Roman font. Further, this brief contains 4,976 words, exclusive of the caption, tables, and signature blocks.

/s/ *Sidney S. Liebesman*
Sidney S. Liebesman (DE 3702)